UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
C10 MEDIA LLC,

                Plaintiff,

    -against-

LEARFIELD COMMUNICATIONS, LLC,

                Defendant.
------------------------------------------------------X

**VERIFIED COMPLAINT
AND JURY DEMAND**

Plaintiff C10 Media LLC (hereinafter "C10 Media" or "Plaintiff"), by its attorneys, DORF & NELSON LLP, as and for its Verified Complaint and Jury Demand, against the defendant, LEARFIELD COMMUNICATIONS, LLC (hereinafter "Learfield" or "Defendant"), hereby alleges upon information and belief as follows:

## I.  NATURE OF ACTION

1.     Plaintiff, C10 Media, brings this action based upon Defendant Learfield's violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

2.     Section 4 of the Clayton Act, 15 U.S.C. § 15, provides that any person who has been injured as a result of conduct prohibited by the antitrust laws may bring suit in federal court to recover three times the damages the person has suffered, as well as costs and reasonable attorneys' fees.

3.     Learfield and some smaller firms manage the multimedia rights for college and university athletic programs throughout the entire United States. These athletic programs are limited in their ability to generate revenue, and sponsorship revenue is important for their fiscal budgets.

4.     Agreements by Learfield and others to not compete have restrained competition in the multimedia rights market causing financial harm to colleges and universities that rely on

Learfield and these smaller firms for sources of revenue. The agreements include contracts, combinations, or conspiracies that restrain trade or commerce throughout the United States in violation of Section 1 of the Sherman Antitrust Act, which have improperly restrained competition including without limitation, the athletic programs of colleges and Universities and other competitors in the industry including the Plaintiff C10 Media.

5.      Plaintiff, C10 Media, has suffered damages and has been injured as a result of conduct by Learfield that is prohibited by the antitrust laws. C10 Media has been and continues to be improperly restrained and restricted from competition through the anti-trust violations by Learfield, causing it to suffer damages, loss of business and loss of profits that have been proximately caused by Learfield's violations of Section 1 of the Sherman Antitrust Act.

## II.  JURISDICTION, VENUE, AND COMMERCE

6.      Plaintiff C10 Media brings this action under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover damages it sustained by reason of defendant Learfield's violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Plaintiff, C10 Media, seeks to recover three times the damages that C10 Media has suffered, as well as costs and reasonable attorneys' fees. This Court has subject matter jurisdiction over this action under Section 4 of the Clayton Act, 15 U.S.C. § 15.

7.      This Court has personal jurisdiction over Defendant Learfield. Learfield has offices in the State of New York and transacts business in the State of New York.

8.      Defendant is engaged in interstate commerce and in activities substantially affecting interstate commerce. Learfield engages in a regular, continuous, and substantial flow of interstate commerce, and its management of multimedia rights in the market and other services have had and continues to have a substantial effect on interstate commerce.

2

9.      Venue is proper in this district under Section 4 of the Clayton Act, 15 U.S.C. §

15, and Section 12 of the Clayton Act, 15 U.S.C. § 22 and 28 U.S.C. § 1391(c).

### III. PARTIES

10.     Plaintiff, C10 Media LLC, is a Delaware limited liability company with its

principal place of business in Westchester County, New York and is engaged in the multimedia

rights market, and was created on or about November 17, 2021.

11.     Upon information and belief, IMG was a division of the global entertainment firm

WME Entertainment Parent LLC, which provided different services to universities including

trademark licensing, ticketing, and management services of multimedia rights with revenue in

the U.S. of approximately $402 million dollars.  Learfield provided the same type of services to

colleges and universities and in 2018, Learfield merged with IMG.  Learfield's U.S. revenue

from multimedia rights before the merger was approximately $406 million dollars.

### IV. BACKGROUND

12.     Throughout the United States there are over a thousand colleges and universities

sports teams involved in intercollegiate athletics.  Most programs are small and are funded by

student fees, but there are also many with extensive facilities and funding.

13.     Large universities need large budgets funded by television rights, ticket revenue,

donations and sale of multimedia rights.

14.     Multimedia rights involves advertising at games on school properties and athletic

arenas and sponsored events including but not limited to billboard, promotions, radio shows,

signage at stadiums and digital advertising.

15.     Upon information and belief, Defendant Learfield has entered into agreements

and coordinated to restrict competition in the industry by forming joint ventures and entering into

agreements to prevent competition in the multimedia rights industry.  These joint ventures

restrict competition and prevent colleges and universities from the advantages of an open and free market of competition with almost no benefit, if any to the colleges and universities. The joint ventures are also vertical also aimed at preventing access to vendors in the industry thus restricting competition.

16.     On September 24, 2020, Learfield made a public announcement and published a press release that ANC Sports Enterprises, LLC "ANC", a wholly owned subsidiary of Learfield, entered into a strategic partnerships with Lighthouse Technologies Limited ("Lighthouse"), "a global leader in LED video display technology and ANC experienced design and execution company, today announced a strategic partnership across the United States sports landscape." "Lighthouse is a global leader in developing, manufacturing and marketing indoor/outdoor LED video display solutions for sports arenas, digital out-of-home media, corporate, retail and entertainment venues across the globe" founded in Hong Kong in 1997.

17.     The partnership between ANC and Lighthouse gives ANC "exclusive distribution rights" according to their publication "primarily within professional sports and Division I venues" run by national collegiate athletic associations or NCAA throughout the entire United States.  This exclusive partnership agreement is a joint venture that is in violation of Section 1 of the Sherman Anti-trust Act which illegally restricts competition in the multimedia rights industry.

18.     On March 25, 2021, Learfield through its subsidiary, ANC, made another announcement that it entered into another "strategic partnership that makes ANC the exclusive North American distributor, integrator and service partner for digiLED's LED products, including the company's customer flexible LED, ultra-thin line of products and other experiential LED solutions."  The partnership between ANC and digiLED is a joint venture that affects ongoing service offerings for LED video screens and scoreboards in sports arenas

4

throughout the entire United States, and by making it exclusive, illegally restricts competition, drastically impacting competition in the multimedia rights market and illegally restricts competition in violation of Section 1 of the Sherman Anti-trust Act.

19.     Upon information and belief, Learfield also eliminated competition by having smaller competitors sign non-compete agreements, or agree to not bid for a couple of years, in order to limit competition in the industry.  Learfield prevents competition by threatening to enforce the non-compete agreements that it improperly obtained in the first place.

20.     Learfield also attempted to use joint ventures as a way to co-opt smaller competitors by getting them to agree to non-compete or bid on any schools for over a year. Learfield used joint ventures to eliminate smaller competitors from the industry.

21.     When a competitor wants to compete Learfield suppresses the bid by threatening to enforce non-compete agreements. These efforts to suppress competition is also reflected in legal settlements crafted with smaller competitors to reduce competition by preventing the company from bidding on for a university.

22.     Learfield also attempts to force its employees to sign non-compete agreements in an effort to prevent them from later working in the industry or from competing.  Learfield's efforts to suppress competition include employee disputes in an effort to suppress competition. All this behavior by Learfield is the exact type of restrain of competition that the United States found to be illegal and a violation of Section 1 of the Sherman Anti-trust Act causing it to bring the Anti-Trust Action against Learfield.

### V.  VIOLATIONS - CLAIM FOR RELIEF

23.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 22 inclusive, as if fully set forth at length herein.

24.    Pursuant to the Sherman Antitrust Act, 15 U.S.C. § 1, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

25.    Section 4 of the Clayton Act, 15 U.S.C. § 15, provides that any person who has been injured as a result of conduct prohibited by the antitrust laws may bring suit in federal court to recover three times the damages the person has suffered, as well as costs and reasonable attorneys' fees.

26.    The word "person" defined at 15 U.S.C. § 12, of the Clayton Act, shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country.  Plaintiff, C10 Media, is a person within the meaning of the statute.

27.    The non-compete agreements by Learfield unreasonably restrain competition in the multimedia rights market in the United States in violation of Section 1 of the Sherman Act and are illegal.

28.    Defendant Learfield's conduct has caused harm to the competitive process by restricting and eliminating competition in the management of multimedia rights and services, reduces revenue of colleges and universities and decreases the quality of services provided in the industry and continues to do so.

29.    The partnership joint venture agreements between Learfield acting through its subsidiary ANC giving it exclusive distribution rights for vendors including Lighthouse and digiLED in the multimedia market throughout the entire United States, and the non-compete agreements by Learfield and ANC are not necessary for any legitimate goals, unreasonably restricts competition, and any benefits are outweighed by the harm to competition.  In addition, there are other means by which to accomplish procompetitive goals.

30.    On February 14, 2019, an Anti-Trust Action was brought by the United States against Learfield in the U.S. District Court, for the District of Columbia, which filed its proposed Final Judgment with its complaint.  A copy of the Complaint is annexed hereto as **Exhibit A,** and is incorporated herein by reference as though fully recited at length herein.

31.    Part of the relief requested by the United States in its Complaint against Learfield, was that Defendant Learfield "eliminate and cease enforcing all agreements not to compete and be prohibited from otherwise acting to restrain trade unreasonably."  The United States also sought to permanently enjoined Learfield from engaging in, enforcing, carrying out, or attempting to engage in, enforce, carry out, or renew the agreements in which Defendants are alleged to have engaged, or any other agreement having a similar purpose or effect, in violation of Section 1 of the Sherman Act, 15. U.S.C. § 1 See Complaint, at page 7, **Exhibit A.**

32.    Learfield appeared by its counsel Davis Polk & Wardwell LLP on February 22, 2019.  Thereafter, on March 27, 2020, an unopposed motion for Judgment was filed by the United States, on consent, that imposed a Federal Injunction against Learfield to prevent Learfield from agreeing or coordinating to limit competition in the multimedia rights market in violation of the Sherman Act, resulting in harms to the competitive process including limiting competition in the Multimedia Rights market.

33.    There is a federal Order in place against Learfield, by consent, pursuant to the Final Judgment signed and entered on October 23, 2020 ("Final Judgment"), by the Hon. Emmet G. Sullivan, of the United States District Court, District of Columbia, from an antitrust action brought by the United States of America against Learfield, for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (hereinafter the "Anti-Trust Action").  A copy of the Final Judgment is annexed hereto as **Exhibit B,** and is incorporated herein by reference as though fully recited at length herein.

34. The Final Judgment prohibits Learfield, directly or indirectly from, *inter alia*, the following:

1. Communicate with any Competitor concerning any Competitively Sensitive Information relating to a Bid or Bidding;

2. Agree, combine, conspire, or collude with any Competitor to participate in any joint Bid, collaborative Bid, cooperative Bid, or shared Bid;

3. Agree with any Competitor that any Defendant or any Competitor will not Bid for any Multimedia Rights contract, opportunity, or arrangement;

4. Communicate, offer, invite, propose, encourage, facilitate, or suggest any joint Bid, collaborative Bid, cooperative Bid, or shared Bid with any Competitor.

35. The Final Judgment also required Learfield to institute an antitrust compliance program, which upon information and belief; it never did, in violation of the consent order.

36. The Final Judgment defines "Competitor" to mean "any Person (other than any Defendant) engaged in, or considering engaging in, the business of servicing, marketing, or commercializing Multimedia Rights or any Multimedia Rights contract, agreement, or opportunity."

37. Pursuant to the Final Judgment, this definition of "Competitor", of course, includes C10 Media LLC.

38. Pursuant to the Final Judgment, "Learfield" means Learfield Communications, LLC, a Delaware limited liability company headquartered in Plano, Texas, its successors and assigns (including but not limited to A-L Tier I LLC), and its subsidiaries, partnerships, joint ventures, and their directors, officers, managers, agents and employees. This definition includes ANC Sports Enterprises, LLC, a wholly owned subsidiary of Learfield.

39. The Final Judgment defines "Multimedia Rights" to mean "the sponsorship and advertising rights of a college or university intercollegiate athletic program, including but not

8

limited to in-venue signage, television advertising, radio advertising, print advertising, digital advertising, and social media advertising."

40.     Upon information and belief, in or about 2020 to the present, Learfield required all of its employees to sign improper non-compete/non-solicitation agreements notwithstanding the fact that the Complaint by the United States in the Anti-trust Action expressly found it to be a violation of Section 1 of the Sherman Anti-trust Act for Learfield to do so.

41.     Moreover, Learfield also separately violated the Final Judgment by requiring C10 Media LLC to sign and agree to a Non-Disclosure Agreement ("NDA") on April 8, 2022, by requiring that C10 Media LLC agree that it will be bound by the provisions of Section 5-8 of the Employment Agreement of a former employee as if it were a party to the Employment Agreement.

42.     In contemplation of a transaction, Learfield required that C10 Media sign an NDA and agree to a Non-Compete/Non-Solicitation provisions that prohibits it from competing or rendering services to certain specific businesses and from doing any business managing, selling or distributing multi-media rights, advertising sales and/or sponsorships or related services to high schools, colleges, universities, athletic conferences, high school associations or federation or consulting, analysis or valuation services with respect to multi-media rights, advertising sales and/or sponsorships for colleges, universities or collegiate athletic conference's anywhere in the United States.

43.     In addition, during the Non-Compete Period, the NDA prohibited C10 Media from, directly or indirectly, consulting with, render services for, be employed in an executive, managerial or administrative capacity by any college or university, for a period of two years.

44.     No transaction was consummated, but Learfield obtained what it wanted which was to try to get a competitor to agree unwittingly to not compete in the industry and to restrain

9

competition. This subterfuge tactic used by Learfield of threatening competitors and then getting them to sign non-compete provisions under false pretenses in order to restrain competition, is exactly some of conduct, in addition to other conduct by Learfield, that the Department of Justice considered illegal and a violation of Section 1 of the Sherman Anti-trust Act.

45.     Learfield is attempting to enforce the non-compete/non-solicitation clause against C10 Media with regard to any college, university, athletic conference or athletic conference-related network and generally with respect to the media rights market. This is exactly part of what the Complaint by the United States sought to prevent and is exactly what, *inter alia*, the federal injunction contained in the Final Judgment prohibits Learfield from doing, to wit: An agreement with a competitor prohibiting the bidding on any multimedia rights, contract, opportunity, or arrangement with regard to colleges and universities.

46.     The agreement impermissibly seeks to have Plaintiff, *inter alia*, to not Bid for any Multimedia Rights contract, opportunity, or arrangement, in order to improperly restrain any potential competition in the market place, in violation Final Judgment and Section 1 of the Sherman Act.

47.     Learfield's purported non-compete/non-solicitation agreements and non-disparagement provisions, violate the Final Judgment.

48.     Upon information and belief, Learfield failed to get the approval of the federal Court and the Department of Justice before asking C10 Media to sign the NDA containing the non-compete/non-solicitation agreement, or before attempting to enforce it, or before communicating with a competitor concerning Competitively Sensitive Information all in violation of the Sherman Act, 15 U.S.C. § 1 as well as in violation of the federal injunction contained in the consent order.

49.    The non-compete agreement is void and unenforceable since it violates Section 1 of the Sherman Act, 15 U.S.C. § 1, and also violates the Final Judgment and the federal injunction contained therein.

50.    The non-compete agreement impermissibly seeks to have C10 Media agree, *inter alia*, to not Bid for any Multimedia Rights contract, opportunity, or arrangement, in order to improperly restrain any potential competition in the market place, in violation the Section 1 of the Sherman Act, 15 U.S.C. § 1.

51.    Learfield through its subsidiary, ANC, entered into a strategic partnership with Lighthouse which gives ANC "exclusive distribution rights" throughout the entire United States, within professional sports and Division I venues run by national collegiate athletic associations / NCAA throughout the entire United States.  ANC also entered into another "strategic partnership that makes ANC the exclusive North American distributor, integrator and service partner for digiLED's LED video screens and scoreboards in sports arenas throughout the entire United States. The exclusive partnership agreements that ANC has with Lighthouse and DigiLED are joint ventures that illegally restricts competition in the multimedia rights market drastically impacting competition with respect to both professional sports as well as the sponsorship and advertising rights of colleges, universities and intercollegiate athletic programs.

52.    Upon information and belief, Learfield failed to notify and failed to get the approval of the federal Court and the Department of Justice before entering into the exclusive agreements with digiLED and Lighthouse.

53.    Learfield's above actions inclusive of the non-compete/non-solicitation agreement and its exclusive relationships with Lighthouse and digiLED are in violation of the Section 1 of the Sherman Act, 15 U.S.C. § 1, and are also in violation of the federal injunction contained in the Final Judgment, and were knowing and willful, or in reckless disregard, in an improper

attempt to illegally restrain competition in the industry and to prevent C10 Media from competing in the Multimedia Rights market.

54.     Plaintiff, C10 Media, has suffered and will continue to suffer irreparable harm, actual damages, lost profits, and consequential damages as the result of Learfield's improper and illegal actions in violation of Section 1 of the Sherman Anti-trust Act, which damages are continuing and have been proximately caused by the Defendant Learfield, in an amount to be determined at the trial, for all of its actual damages, pecuniary damages, lost profits, consequential damages, as well as treble, exemplary and/or punitive damages pursuant to statute, together with statutory interest, plus Plaintiff's reasonable attorney's fees.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, C10 Media LLC, respectfully requests judgment against the Defendant, Learfield Communications, LLC, as follows:

1. Enter judgment in favor of Plaintiff and against the Defendant on all causes of action;

2. Award Plaintiff actual damages, pecuniary damages, lost profits, consequential damages, and statutory damages in an amount to be determined at trial, as well as treble, exemplary and/or punitive damages pursuant to statute, together with statutory interest;

3. Award Plaintiff its reasonable attorney's fees and costs pursuant to statute; and

4. Award Plaintiff such other and further relief as this Court deems be just, proper and equitable.

## VII.    JURY TRIAL DEMANDED

Plaintiff by its attorneys herein respectfully requests a trial by jury of all claims and causes of action in Plaintiff's Verified Complaint.

Dated: Rye, New York
      August 29, 2022

                                                            DORF & NELSON LLP

By:

                                                            Jonathan B. Nelson
                                                            *Attorneys for Plaintiff*
                                                            *C10 MEDIA LLC*
                                                            555 Theodore Fremd Avenue
                                                            Rye, NY 10580
                                                            (914) 381-7600

13

**VERIFICATION**

STATE OF NEW YORK        )
                                  ) ss.:

COUNTY OF  WESTCHESTER    )

JEROME N. CIFARELLI, being duly sworn, deposes and says:

I am an authorized Manager of C10 Media LLC, one of the parties to the action herein; and, as such, I am fully familiar with the facts and circumstances of this action.

I have read the foregoing Complaint and know the contents thereof, and the same is true to my knowledge, except as to those matters stated to be alleged upon information and belief and, as to those matters, I believe them to be true.

_____
JEROME N. CIFARELLI

Sworn to before me on
2 9th day of August, 2022

_____
Notary Public

```
DENISE GOGLIA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01GO6381509
Qualified in New York County
Commission Expires Oct 01, 2022
```

14